# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| **KEN TANOURY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-1142-L |
| | § | |
| **SYMPHONY SERVICE CORP.**, | § | |
| | § | |
| **Defendant.** | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION

Pursuant to the *Order of Reference* dated May 22, 2012, before the Court is *Defendant Symphony Service Corp.'s Motion to Dismiss and Compel Arbitration*, filed April 30, 2012 (doc. 4). Based on the relevant filings and applicable law, the motion should be **GRANTED**.

## I. BACKGROUND

Ken Tanoury (Plaintiff) is a former employee of Symphony Service Corp. (Defendant), a software development company incorporated in Delaware with its principal place of business in Palo Alto, California. (Docs. 1 at 10; 5 at 6.)[1] Plaintiff worked for Defendant as a sales executive from 2006 until his termination on February 14, 2012. (Docs. 5 at 6-7; 6 at 4; 8 at 1.)

In May, 2007, Defendant provided Plaintiff with a Sales Executive 2007 Incentive Compensation Plan (2007 Plan) for the period January 1 through December 31, 2007. (Doc. 5 at 6.) The 2007 Plan outlined the terms of Plaintiff's compensation, including base salary and commissions. (Doc. 6 at 5-8.) Among other provisions, the 2007 Plan included an arbitration provision. (*Id.*) Plaintiff signed the 2007 Plan on May 11, 2007. (Docs. 5 at 6; 6 at 8.) When the

---

[1] Citations refer to the cm/ecf system page number at the top of each page rather than the page numbers at the bottom of each filing.

2007 Plan expired, it was not immediately replaced. (Docs. 5 at 6; 6 at 3.) Plaintiff continued to work for Defendant, but during the period 2008 through 2010, his compensation was governed by oral salary and commission agreements with Defendant. (Docs. 1 at 12-13; 8 at 2.)

In April 2011, Defendant adopted a written compensation plan--the 2011 Incentive Compensation Plan (2011 Plan)--instituting a salary and commission structure for the January 1 through December 31, 2011 time period. (Docs. 5 at 6; 6 at 9-12.) The 2011 Plan provided that outstanding commissions for prior years would be paid according to the commission agreements in effect for those years as summarized on a final 2010 commission statement. (Docs. 6 at 11; 8 at 2.) The 2011 Plan also incorporated an arbitration provision that provided in relevant part:

> The parties hereby waive their rights to a trial before a judge or jury and agree to arbitrate before a neutral arbitrator, to the extent permitted by applicable law, any and all claims or disputes arising out of the Sales Executive's employment, including, but not limited to claims arising out of or related to this Plan or claims against any current or former Sales Executive, director or agent of the Company, breach of contract, breach of the covenant of good faith and fair dealing, fraud, misrepresentation, claims regarding commission, bonuses, unfair business practices, or any tort or tort like causes of action.

(Docs. 5 at 7; 6 at 11-12.) Besides the arbitration provision, the 2011 Plan included a clause regarding amendment and termination that stated:

> The Company reserves and retains the right to modify, rescind or terminate this Plan in whole or in part, at its sole discretion, and nothing in this Plan limits this right in any way or creates any rights in any Sales Executive of future participation in this Plan or any other Plan, or constitutes any guarantee of compensation or employment with the Company. Further the Company does not have any obligation under this Plan or otherwise to adopt this or any other compensation plan in the future. Any modification to this Plan may only be made in a writing signed by the President, Software Management Solutions and such modification shall be effective ten (10) days following written notification to the Sales Executive.

(*Id.*) Finally, the 2011 Plan provided that "[t]his Plan contains the entire understanding between the Sales Executive and the Company concerning the terms and conditions described herein. Any prior

understanding, representations or agreements, whether oral or written, are superseded and replaced by this Plan." (*Id.*)  Plaintiff acknowledged his receipt of the 2011 Plan by email on April 13, 2011. (Doc. 6. at 9, 13.)

On March 13, 2012, Plaintiff filed suit in state court, asserting claims against Defendant for breach of contract and recovery in quantum meruit based on alleged nonpayment of commissions and bonuses between 2008 and 2010. (*See* doc. 1.)  On April 12, 2012, Defendant removed the case to the United States District Court for the Northern District of Texas, Dallas Division. (*Id.*)  On April 30, 2012, Defendant moved to dismiss and to compel arbitration. (*See* doc. 4.)  With a timely filed response and reply, its motion is ripe for consideration. (*See* docs. 8; 9.)

## II.  MOTION TO COMPEL ARBITRATION

Defendant moves to compel arbitration based on a provision in the 2011 Incentive Compensation Plan (2011 Plan) which requires arbitration of any dispute arising out of Plaintiff's employment with Defendant. (Doc. 5 at 10-15.)  Plaintiff responds that his claims for unpaid compensation for the period 2008 through 2010 fall outside the scope of the 2007 and 2011 Plans because those agreements governed the parties' agreements for specific time periods (the 2007 and 2011 calendar years). (Doc. 8 at 3.)  In the alternative, he contends that the arbitration agreement is illusory and is therefore unenforceable. (*Id.*)

**A.    Legal Standard**

The Federal Arbitration Act (FAA) "embodies the national policy favoring arbitration." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).  The FAA "provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, and for orders compelling arbitration when one party has failed or refused to comply with an

3

arbitration agreement." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (citing 9 U.S.C. §§ 3-4.) Courts in the Fifth Circuit employ a two-step inquiry when determining a motion to compel arbitration under the FAA. *See Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). The first step is to determine whether the parties agreed to arbitrate the dispute at issue. *Webb v. Instacorp., Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (per curiam). The second step is to determine whether any legal restraints external to the agreement foreclose arbitration of the dispute. *OPE Int'l LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445-46 (5th Cir. 2001) (per curiam) (citing *Mitsubishi*, 473 U.S. at 628.).

Given the federal policy favoring arbitration, the court's task is narrowly circumscribed. *Singh v Choice Hotels, Int'l, Inc.*, No. 3:07-CV-0378-D, 2007 WL 2012432, at *2 (N.D. Tex. July 11, 2007). The court "may consider only issues relating to the making and performance of the agreement to arbitrate." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967); *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 472 (5th Cir. 2002). "[I]f the complaint relates only to the arbitration clause itself, the court should adjudicate the claim. If, however, the complaint relates to the entire agreement, then it must be referred to the arbitrator for decision." *Strawn v. AFC Enters., Inc.*, No. 99-41384, 2000 WL 1835291, at *3 (5th Cir. 2000) (per curiam); *see also Singh*, 2007 WL 2012432, at *2.

**B.     Step One–Agreement**

The determination of whether the parties agreed to arbitrate the dispute at issue requires consideration of whether a valid agreement to arbitrate exists among the parties and whether the dispute is within the scope of the arbitration agreement. *Webb*, 89 F.3d at 258. Courts should

4

generally apply "ordinary state-law principles that govern the formation of contracts," but must give due regard to the federal policy favoring arbitration and resolve any ambiguities as to the scope of the arbitration clause itself in favor of arbitration. *Id*. (quoting from *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989)) (internal quotation marks omitted).

Under Texas law,[2] a party who seeks to compel arbitration has the initial burden to establish the existence of an arbitration agreement and to show that the asserted claims fall within its scope. *See In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999) (per curiam), *abrogated in part by In re Halliburton Co.*, 80 S.W.3d 566 (Tex. 2002); *Wachovia Sec., LLC v. Emery*, 186 S.W.3d 107, 113 (Tex. App.—Houston [1st Dist.] 2006, no pet.). The burden then shifts to the party opposing arbitration to present evidence showing why the arbitration agreement should not be enforced. *Id.* The party opposing arbitration may show, for example, that the arbitration agreement was procured in an unconscionable manner, or induced or procured by fraud or duress. *See In re Oakwood*, 987 S.W.2d at 573.

Here, Defendant has presented evidence of agreements to arbitrate in the 2007 Plan and the 2011 Plan. The 2007 Plan does not cover Plaintiff's claims because the agreement expressly covers the period from January 1 through December 31, 2007, and Plaintiff's claims arose after the agreement expired. The language in the 2011 Plan extends to "*any and all claims* or disputes *arising out of* the Sales Executive's *employment*." The arbitration provision is not limited to claims related to the 2011 Plan; it uses the phrase "*including, but not limited to* claims arising out of or related to this Plan*" to convey the parties' intention that the arbitration agreement be given a broad interpretation. Moreover, the 2011 Plan specifically references payment of commissions for prior

---

[2] The parties both cite Texas law at the first step of the analysis. (*See* docs. 5 at 9-12; 8 at 6-9.)

years. In addition, the arbitration provision specifically references claims for *breach of contract* and claims regarding the payment of *commissions and bonuses*. The language of the arbitration agreement is clearly broad enough to cover Plaintiff's claims arising out of his employment regarding unpaid compensation for the years 2008 through 2010. Plaintiff acknowledged the terms of the 2011 Plan by e-mail, a necessary formality to his participation in the incentive compensation plan and an act which evidences his acquiescence to the terms of the 2011 Plan. Defendant has met its initial burden of showing that there was an agreement to arbitrate and that Plaintiff's claims fall within its scope. *See In re Oakwood*, 987 S.W.2d at 573; *Emery*, 186 S.W.3d at 113.

The burden now shifts to Plaintiff to show why the agreement should not be enforced. Plaintiff argues that the arbitration agreement fails as a matter of contract law because the agreement to arbitrate is illusory since Defendant retains the right to terminate or rescind the 2011 Plan at any time.[3] (Doc. 8 at 9.)

Under Texas law, arbitration agreements, like all other contracts, must be supported by consideration. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (citation omitted). "In the context of stand-alone arbitration agreements, binding promises are required on both sides as they are the only consideration rendered to create a contract." *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) (per curiam) (citations omitted). Mutual obligation is lacking if "one party can avoid its promise to arbitrate by amending the provision or terminating it altogether." *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 424 (Tex. 2010) (per curiam) (citing *In re*

---

[3] To the extent that Plaintiff is arguing that the entire agreement is invalid and unenforceable as illusory, such a challenge must be decided through arbitration because it attacks the contract as a whole. *See Wynne v. American Express Co.*, No. 2:09-CV-00260-TJW, 2010 WL 3860362, at *6 (E.D. Tex. Sept. 30, 2010); *Strawn, Inc.*, 2000 WL 1835291, at *2-3; *Singh*, 2007 WL 2012432, at *2.

*Halliburton, Co.*, 80 S.W.3d at 570). By contrast, "when an arbitration clause is part of an underlying contract, the rest of the parties' agreement provides the consideration." *In re AdvancePCS Health L.P.*, 172 S.W.3d at 607 (citing *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001)).

In determining whether a promise to arbitrate is illusory in the context of a stand alone arbitration agreement where one party has the unilateral right to modify or eliminate the agreement, Texas courts consider: 1) whether the agreement provides for advance notice prior to modification or termination; 2) whether the agreement to arbitrate survives any termination or expiration of the parties' relationship; and 3) whether the agreement survives as to claims arising prior to termination or expiration of the agreement. *See In re 24R, Inc.*, 324 S.W.3d 564, 567-68 (Tex. 2010) (per curiam); *In re Odyssey Healthcare, Inc.*, 310 S.W. 3d at 424; *In re Halliburton Co.*, 80 S.W.3d at 570; *Budd v. Max Int'l, LLC*, 339 S.W.3d 915, 919-20 (Tex. App.—Dallas 2011, no. pet.).

Here, there is no stand alone arbitration agreement; the arbitration clause is merely one provision in a contract defining various terms of the employment relationship between Plaintiff and Defendant. Under Texas law, consideration of whether Plaintiff and Defendant were mutually bound by their promises to arbitrate is unnecessary because the underlying agreement (the 2011 Plan) provides the required consideration for the arbitration clause. *See Cleveland Constr., Inc. v. Levco Constr., Inc.*, 359 S.W.3d 843, 853-54 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd) (holding arbitration provision valid and enforceable even though arbitration was "at the option of [appellant]" because the underlying contract provided consideration); *Dorfman v. Max Int'l, LLC*, No. 05-10-00776-CV, 2011 WL 1680070, at *2 (Tex. App.—Dallas May 5, 2011, no. pet.) (upholding agreement to arbitrate where the parties' underlying agreement provided necessary

7

consideration); *see also Wynne v. American Express Co.*, No. 2:09-CV-00260-TJW, 2010 WL 3860362, at *6 (E.D. Tex. Sept. 30, 2010) (finding arbitration provision enforceable where underlying agreement served as consideration for promise to arbitrate); *Swindle Construction, L.P. v. Travelers Cas. & Surety*, No. 7:08-CV-00174-O, 2009 WL 1904852, at *2 (N.D. Tex. July 1, 2009) (upholding arbitration provision which gave one party the sole option to arbitrate because underlying subcontract provided sufficient consideration to render arbitration agreement enforceable). The arbitration agreement is not void, invalid, or unenforceable as illusory.

**C.    Step Two–Legal Restraints**

The next step is to determine whether any legal restraints external to the agreement foreclose arbitration of the claims at issue here. *See OPE Int'l LP*, 258 F.3d at 445-46. Here, Plaintiff does not argue that any external legal constraints exist. Since no legal restraints external to the 2011 Plan foreclose arbitration of Plaintiff's claims, he should be compelled to submit his claims to arbitration.

### III. MOTION TO DISMISS/STAY THE SUIT

Defendant moves to dismiss the suit on grounds that all of Plaintiff's claims are arbitrable. Alternatively, it seeks to stay the proceedings pending arbitration. Under § 3 of the Federal Arbitration Act, a court must stay the trial of the action until arbitration is complete if it determines that the claims are properly referable to arbitration and one of the parties applies for a stay of the proceedings. 9 U.S.C. § 3; *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). A court may dismiss the suit, however, if it determines that all of the issues raised before it must be submitted to arbitration. *Id.* (citations omitted). Given that all of the issues raised by Plaintiff are arbitrable and must be submitted to arbitration, the Court should dismiss the suit without prejudice.

## IV. RECOMMENDATION

The motion to compel arbitration should be **GRANTED,** and the case should be **DISMISSED without prejudice**.

**SO RECOMMENDED**, this 5th day of February, 2013.

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE